# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN ANNE MILLER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. SACV 10-01307-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On August 27, 2010, Kathleen Anne Miller ("Plaintiff" or "Claimant" or "Miller") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance ("SSDI") benefits. The Commissioner filed an Answer on March 8, 2011. On May 12, 2011, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. The matter is now ready for decision. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

## BACKGROUND

Plaintiff is a 61 year old female who filed an application for SSDI benefits on June 8, 2007, alleging disability beginning April 30, 2005. (AR 16.) Plaintiff has not engaged in substantial gainful activity since that date. (AR 18.)

Plaintiff's claim was denied initially on September 12, 2007, and on reconsideration on October 18, 2007. (AR 16.) Plaintiff filed a timely request for hearing, which was held on January 28, 2009, in San Bernardino, California, before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. (AR 16.) The Claimant did not appear at the hearing. (AR 16.) Vocational expert ("VE") Corinne Porter testified. (AR 16.) The Claimant was represented by Counsel. (AR 16.)

A supplemental hearing was held on May 21, 2009, at which Plaintiff appeared and testified. (AR 16.) Another VE, David A. Rinehart, also appeared at the hearing, as did counsel for Plaintiff. (AR 16.)

The ALJ issued a decision denying benefits on September 15, 2009. (AR 16-26.) The Appeals Council denied review on July 2, 2010. (AR 1-5.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

1. Whether the finding that Plaintiff's past relevant work imparted transferable skills is based on substantial evidence.

2. Whether the ALJ erred in rejecting the functional capacity opinions of treating internist Beck.

3. Whether the finding that Plaintiff's claims of disabling symptoms are not credible is based on substantial evidence.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.

Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla' . . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the

claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

## THE ALJ DECISION

In this case, the ALJ determined at step one that Plaintiff has not engaged in substantial gainful activity since April 30, 2005, the alleged disability onset date. (AR 18.)

At step two, the ALJ found the following medically determinable severe impairments: degenerative arthritis of the hands; degenerative disc disease of cervical spine; lumbar spinal stenosis; plantar fasciitis of the left foot. (AR 19.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (AR 19.)

The ALJ then found that Plaintiff has a RFC for "a significant range of light work" with the following limitations:

> The claimant can lift 20 pounds occasionally and 10 pounds frequently; the claimant can sit, stand/or walk six hours of an eight-hour work day, 30 to 45 minutes at a time; the claimant is precluded from constant use of her hands, forceful twisting and grasping; the claimant is precluded from jobs requiring wearing of tight clothing; and the claimant could miss work one to two times a month.

(AR 19.) In determining Plaintiff's RFC, the ALJ made an adverse credibility determination. (AR 21.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 25.) Nonetheless, the ALJ determined with the aid of VE testimony that Claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy such as receptionist that Claimant can perform. (AR 25-26.)

Consequently, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26.)

**DISCUSSION**

**I. THE ALJ'S ADVERSE CREDIBILITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff states that the following symptoms prevent her from sustaining gainful employment: lumber spine pain; severe back pain; carpal tunnel syndrome; spinal stenosis; fibromyalgia; cervical spine impairment; reflect sympathetic dystrophy; soft tissue injuries of the arm requiring multiple procedures; and hypertension. (AR 21.) The ALJ made an adverse credibility finding because Claimant's subjective symptoms were not supported by the medical evidence and were inconsistent with her daily activities, and Plaintiff gave inconsistent statements. (AR 20-25.) Plaintiff challenges the ALJ's adverse credibility determination but that determination is supported by substantial evidence and free of legal error.

**A. Relevant Law**

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 & n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

**B.  Analysis**

In determining Plaintiff's RFC, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 21.) Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for discounting her credibility. Smolen, 80 F.3d at 1283-84. The ALJ did so.

First, the ALJ found Plaintiff's subjective symptoms were not consistent with the objective medical evidence relied on for Plaintiff's RFC. An ALJ is entitled to consider whether there is a lack of objective medical evidence to corroborate a claimant's subjective symptoms, so long as it is not the only reason for discounting the claimant's credibility. Bunnell, 947 F.2d at 345. Here, the ALJ provided a comprehensive description and analysis of the medical evidence supporting Plaintiff's RFC (AR 21-25), concluding that the light RFC gives Plaintiff generous consideration of her subjective complaints of neck, mild and lower back pain due to degenerative arthritis and spinal stenosis, fibromyalgia, hypertension, carpal tunnel syndrome, and reflex sympathetic dystrophy. (AR 24, 25.) The ALJ gave particular weight to consulting internist Dr. Nicholas Lin and State Agency reviewing physicians Dr. Keith Wahl and Dr. F. Kalmar, all of whom found only light limitations. (AR 24-25.) A rheumatologist, Dr. Powell, diagnosed Claimant in 2006 with moderate degenerative arthritis, mild superimposed fibromyalgia, and modest fatigue not functionally limiting. (AR 21-22.) Dr. Lien Tran Pham, a treating physician at Kaiser Permanente, diagnosed fibromyalgia and reported neck and back pain. (AR 23.) Dr. Pham, however,

also reported no distress, made multiple benign findings, such as normal musculoskeletal range of motion, and prescribed conservative treatment of yoga, exercise, and pain medication inconsistent with Plaintiff's alleged symptoms. (AR 22-23.) Evidence of conservative treatment is a proper basis for discounting a claimant's testimony regarding the severity of an impairment. Parra, 481 F.3d at 751. Further, as discussed below, the ALJ provided legally sufficient reasons for discounting the opinion of treating physician Dr. Adrianne Beck who opined disabling limitations. It is the ALJ's responsibility to resolve conflicts in the medical evidence. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ properly considered the lack of corroborating objective medical evidence for Plaintiff's subjective symptoms in assessing her credibility.

Second, the ALJ found that Plaintiff's daily activities are inconsistent with her alleged subjective symptoms. An ALJ properly may discount Claimant's credibility if her daily activities contradict her other testimony or demonstrate the capacity for work. Orn, 495 F.3d at 639; Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (upholding ALJ determination that daily activities detracted from Plaintiff's credibility where Claimant was capable of caring for her own personal needs, cooking, cleaning, shopping, etc.). Here, the ALJ noted that Plaintiff admitted she is able to do light housework and laundry and load the dishwasher. (AR 20.) She cleans the bathroom, dusts furniture, prepares meals, and shops frequently. (AR 20.) She is able to do light gardening and walk her dog daily. (AR 20.) Such activities are inconsistent with disability. Thomas, 278 F.3d at 959 ("The ALJ also found that Ms. Thomas was able to perform various household chores such as cooking, laundry, washing dishes, and shopping . . . This substantial evidence in the record supports the ALJ's negative conclusions about Ms. Thomas' veracity.").

Third, the ALJ noted numerous inconsistencies in Plaintiff's statements. (AR 20-21.) For example, Plaintiff claimed her back pain affected her ability to wear clothing around her neck and back, but is not affected when she wears comfortable clothing. (AR 20.) She testified she does not garden because of pain, but elsewhere reported she is able to do light

gardening and walk her dog daily. (AR 20.) She alleged difficulties with her hands, including reaching, but elsewhere stated reaching "bugs me a little bit" only when "I overdo it." (AR 20.) There were also inconsistencies between Plaintiff's testimony and reports from medical examiners. For example, Plaintiff claimed to be unable to stand and to have restricted range of motion, but consulting examiners found normal range of motion of all extremities and no restrictions of standing, walking, or sitting. (AR 21.) She could get on and off the examination table and in and out of a chair without difficulty. (AR 21.) Inconsistencies in a claimant's testimony, between a claimant's testimony and her daily activities, and between a claimant's testimony and medical evidence are a proper basis to discount credibility. Light v. Soc. Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider . . . inconsistencies either in his testimony or between his testimony and conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains"). Plaintiff offers but a different interpretation of the same facts regarding only some of the numerous inconsistencies cited by the ALJ. (AR 20-21.) The ALJ's credibility determination, however, cannot be disturbed based on contradictory or ambiguous evidence. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence"); Andrews, 53 F.3d at 1039 (ALJ has responsibility for determining credibility).

In sum, the ALJ presented clear and convincing reasons for discounting Plaintiff's credibility, based on substantial evidence. There was no error.

## II. THE ALJ PROPERLY DISCOUNTED THE TESTIMONY OF TREATING PHYSICIAN DR. BECK

Dr. Adrienne Beck, an internist at Kaiser Permanente, reported that Claimant had chronic neck pain and numbness, as well as fibromyalgia, and is permanently disabled. (AR 361-65.) The ALJ rejected Dr. Beck's analysis because it was based on Claimant's subjective statements, not supported by a significant history of treatment, and undermined by inconsistent findings. (AR 23.) Plaintiff challenges the ALJ's rejection of Dr. Beck's

opinion, but again the ALJ's finding is supported by substantial evidence and free of legal error.

**A.    Relevant Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas, 278 F.3d at 957.  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d at 1041; Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and

convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.   Analysis**

Dr. Beck's opinion that Plaintiff is disabled is contradicted by other previously discussed medical opinion evidence that she suffers from only light limitations. Thus, the ALJ may reject Dr. Beck's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas, 278 F.3d at 957. The ALJ did so.

The ALJ presented three reasons for rejecting Dr. Beck's opinion. First, the ALJ determined that Dr. Beck's opinion was based on Plaintiff's subjective complaints that have been discredited. (AR 23.) This is an appropriate reason for rejecting a treating physician's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1148-48 (9th Cir. 2001) (treating physician's opinion based on subjective complaints of claimant whose credibility has been discounted and properly disregarded); Morgan, 169 F.3d at 602 (same); Andrews, 53 F.3d at 1043 ("an opinion of disability premised to a large extent upon claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted").

Here, Dr. Beck examined Plaintiff but once, on April 10, 2009. (AR 364-65.) The ALJ found that her opinion of "decreased range of motion" of the lumbar back was based on Claimant's subjective complaints. (AR 23.) Dr. Beck then prepared a letter "To Whom It May Concern," dated April 16, 2009, chronicling Claimant's medical history of muscoskeletal

complaints and opining that "her condition," which is not specified but possibly means her fibromyalgia, is permanent and that Claimant is permanently disabled. (AR 361-62.) Finally, Dr. Beck filled out a "check-list style" (AR 23) Multiple Impairment Questionnaire dated April 27, 2009, indicating Plaintiff only can sit or stand but one hour in an eight hour workday and must get up every 30 minutes, and will miss work more than three times a month. (AR 392-99.) Missing work more than twice a month would preclude all work. (AR 55.)

The ALJ's finding that Dr. Beck's opinion is primarily based on Plaintiff's subjective complaints rather than clinical evidence is supported by substantial evidence. Plaintiff disputes the ALJ's finding, observing that Dr. Beck found 12 of 18 tenderpoints consistent with fibromyalgia (AR 364-65). A fibromyalgia diagnosis, however, is based entirely on subjective complaints, Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004), and in this case Plaintiff's subjective complaints have been properly discounted. Dr. Beck, moreover, is an internist, not a rheumatologist like Dr. Powell who did not share Dr. Beck's assessment of Plaintiff's functional capacity. (AR 21-22.) Rheumatology is the relevant specialty for fibromyalgia. Benecke, 379 F.3d at 594 n.4. Plaintiff also cites X-rays indicating cervical spondylosis (AR 386-87), but this was the diagnosis of Dr. Leung, not Dr. Beck, who never made mention of cervical spondylosis in her treatment notes, her To Whom It May Concern letter, or her Multiple Impairment Questionnaire, all of which focused more on fibromyalgia. The ALJ also noted that Dr. Beck's Multiple Impairment Questionnaire is a "check-list style disability statement," which generally is not given much weight. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject check box reports that do not explain the basis for the conclusions reached). Dr. Beck's assessment of Plaintiff's condition is heroic for one clinical visit, considering that Plaintiff controls her symptoms with gardening, yoga and stretching (AR 364), she was told to return in two months (AR 365) and other medical opinions that the ALJ discusses at length (AR 21-25) but are never addressed by Plaintiff contradict Dr. Beck's assessment. Dr. Beck's opinion is

inadequately supported by clinical findings and based largely on Plaintiff's discounted subjective symptoms. Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician's opinion discounted because it lacked objective evidence and was based on claimant's subjective complaints); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, even a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings").

The second reason the ALJ gave for rejecting Dr. Beck's opinion was the lack of a significant history of treatment. (AR 23.) As already noted, Dr. Beck saw Plaintiff but once (AR 23) and was not the primary treating physician; Dr. Pham was. (AR 364.) Plaintiff argues that Dr. Beck had the benefit of Dr. Pham's treatment notes, but notwithstanding Plaintiff's complaints of chronic neck and pain and hand numbness, Dr. Pham found normal range of motion and prescribed only conservative treatment. (AR 22-23, 371-72.) The ALJ's RFC is based in part on Dr. Pham's benign findings. (AR 22-23.) Dr. Beck's involvement with Claimant is simply too limited to overcome the extensive contrary medical evidence that Plaintiff never discusses.

The third reason the ALJ gave for rejecting Dr. Beck's opinion is internal inconsistencies in her Multiple Impairment Questionnaire:

> Specifically, Dr. Beck reported marked limitations in the claimant's hands regarding grasping, turning, twisting objects, fine manipulations and reaching (id., pp. 5-6). However, these findings are inconsistent with Dr. Beck's assertion the claimant has only decreased grasp strength bilaterally (id., p. 5 ); and the claimant can occasionally lift and carry up to 10 pounds (id., p. 8).

(AR 23.) Plaintiff offers nothing to dispute this inconsistency except to say that the ALJ does not fully explain his rationale which Plaintiff says is "insufficiently specific." The Court disagrees. Dr. Beck's marked limitations would preclude carrying anything. The ALJ may properly reject a treating physician's opinion that is internally inconsistent. See Johnson, 60

F.3d at 1433 (an ALJ may disregard treating physician's opinion when it is internally contradictory).

The ALJ is the final arbiter in resolving conflicts and ambiguities in the medical evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008). The ALJ presented specific, legitimate reasons for rejecting Dr. Beck's opinion that were supported by substantial evidence.

### III. THE ALJ'S FINDING OF TRANSFERABLE SKILLS FROM PRIOR RELEVANT WORK IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Based on VE testimony, the ALJ found that Plaintiff could not perform her past relevant work as an assistant mortgage clerk, real estate sales person or administrative clerk. (AR 25, 54-56.) Those jobs are inconsistent with the established RFC limitation to occasional use of the hands for fine manipulation. (AR 25, 55-56.) The VE also testified, however, that Plaintiff acquired transferable skills from her past jobs (AR 25, 56-68) that would enable her to perform other jobs in the national economy, such as receptionist. (AR 25-26.) Thus, the ALJ found Plaintiff not disabled at step five of the sequential process.

Plaintiff challenges the ALJ's transferable skills finding as not based on substantial evidence. Without that finding, the ALJ would have been required by the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, to find Plaintiff disabled. The ALJ's transferable skills finding, however, is supported by substantial evidence and free of legal error.

#### A. Relevant Law

The Commissioner bears the burden at step five of the sequential process to prove that Miller can perform other work in the national economy, given her RFC, age, education and work experience. Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000); 20 C.F.R. § 416.912(g). There are two ways to meet this burden: (1) the testimony of a VE, or (2) reference to the Grids. Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant suffers only exertional limitations, the ALJ must

consult the Grids. Lounsburry, 468 F.3d at 1115. When a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of "disabled." Id. at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If so, the claimant will be awarded benefits. Cooper, 880 F.2d at 1155. If not, then the testimony of a vocational expert is required to identify jobs in the national economy that the claimant can perform. Osenbrock, 240 F.3d at 1162.

**B.   Analysis**

Plaintiff asserts that she should be found disabled under Rule 202.06 of the Grids. Rule 202.06 provides that someone of advanced age like Ms. Miller and a high school education and no transferable skills is considered "disabled." Rule 202.07, however, provides that the same claimant is "not disabled" if he or she has transferable skills. Thus, as Plaintiff observes, the outcome of the case turns on whether her past relevant work imparted skills transferable to other work. (JS 8.)

The ALJ determined based on VE testimony that Plaintiff had acquired transferable skills. (AR 25, 56-57.) Her real estate sales clerk job required the skills of "public contact (people skills or appropriate skills to interact with people), telephone and clerical skills that would transfer to a position as a receptionist." (AR 25.) The VE testified that the receptionist job is a sedentary semi-skilled job (svp 4) and that Claimant's past work gave her people skills that include the ability to answer phones and perform general clerical skills. (AR 25.) The ALJ concluded that, because Plaintiff's RFC permits her to perform the job of receptionist, she is not disabled.

Without citing any authority, Plaintiff asserts that the skills attributed to her that are considered to be transferable are "so vague as not to provide her any real market advantage over any other unskilled worker in performing the job of receptionist," and that Ms. Miller's skills are not truly skills under definitions found in SSR 82-41. (JS 9.) Plaintiff's argument, however, misapplies SSR 82-41 which defines a skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out

of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." 1982 WL 31389 *2 (S.S.A.). SSR 82-41 also observes that a skill gives a person an advantage over unskilled workers and that skills are not gained by doing unskilled jobs. Id. SSR 82-41 admonishes ALJs to consult VEs and vocational sources in making determinations about transferable skills. Id. at *4. The ALJ did so.

SSR 82-14 itself makes reference to administrative office clerk skills and people skills. Id. at **3-4. As directed by SSR 82-14, VE Rinehart focused on Plaintiff's past relevant job as a real estate sales clerk. (AR 56-57.) In the Dictionary of Occupational Titles ("DICOT") at DICOT 250.357-018 (1991 WL 672361), this job is considered skilled and light exertionally with a specific vocational preparation ("svp") level of 5 requiring over six months up to and including a year. (AR 55.) It specifically treats "dealing with people" as a required skill. The receptionist/reception clerk job (DICOT 237.368-038) is sedentary work that involves telephone skills and clerical skills. 1991 WL 672192 (G.P.O.). It has an svp of 4 requiring over 3 months up to and including 6 months and specifically lists dealing with people as a required skill. Id. There is no vagueness here. The ALJ consulted a VE that relied on DICOT vocational information to establish the Plaintiff acquired skills from prior skilled work that took more than 30 days to learn that she can utilize in performing the receptionist job. The Ninth Circuit recently upheld a similar finding in McDermott v. Astrue, 387 Fed. Appx. 732, 733 (9th Cir. 2010) ("The ALJ properly identified that McDermott had the transferable skills of 'record keeping, and public interaction with respect to animals' to work as an animal shelter clerk based on the evidence and vocational expert's testimony").

The ALJ's transferable skills finding is supported by substantial evidence and free of legal error.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and this action is DISMISSED with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 20, 2011       */s/ John E. McDermott*
                JOHN E. MCDERMOTT
            UNITED STATES MAGISTRATE JUDGE